# 22-0887-cv

## United States Court of Appeals

*for the*

## Second Circuit

ESTHER SOLOMON,

*Plaintiff-Appellant,*

— v. —

FORDHAM UNIVERSITY ADMINISTRATION, ROSE HILL CAMPUS,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

JENNIFER A. MCLAUGHLIN
CULLEN AND DYKMAN LLP
*Attorneys for Defendant-Appellee*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700

**CORPORATE DISCLOSURE STATEMENT PURSUANT TO**
**FED. R. APP. P. 26.1**

Defendant-Appellee Fordham University is a not-for-profit corporation organized and existing under the laws of the State of New York. There is no parent corporation or publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

    A.    Basis for District Court Jurisdiction........................................1

    B.    Basis for Court of Appeals Jurisdiction .................................1

COUNTER-STATEMENT OF THE ISSUES PRESENTED
FOR REVIEW ....................................................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF RELEVANT FACTS .................................................3

    A.    Background ..............................................................................3

    B.    Facts Alleged Supporting Discrimination Claims .................4

        i.    Pre-2017 Grievances .....................................................4

        ii.    Post-2017 Assignment of Course Schedule..............6

        iii.    Alleged Code of Conduct Violations...........................7

        iv.    Alleged Failure to Investigate Informal Complaints ................8

    C.    Facts Alleged Supporting Unequal Pay Claims...................9

    D.    Facts Alleged Regarding Comparator Professors .................9

    E.    Facts Alleged Supporting Retaliation Claims ....................10

    F.    Course of Proceedings and Disposition ............................12

        i.    First Order ...................................................................12

        ii.    Second Order................................................................14

        iii.    Third and Fourth Orders ...........................................17

STANDARD OF REVIEW ...................................................................19

SUMMARY OF ARGUMENT ..............................................................20

ARGUMENT .......................................................................................20

i

I      PLAINTIFF-APPELLANT'S FEDERAL DISPARATE TREATMENT CLAIMS WERE PROPERLY DISMISSED ...........20

    A.    Plaintiff-Appellant Fails to Allege an Adverse Employment Action .................................................................23

        1.    Dissatisfaction With Course Assignments Does not Constitute an Adverse Employment Action.............24

        2.    Plaintiff-Appellant Was Never Terminated...................25

        3.    Other Claimed Adverse Employment Actions Not Mentioned on Appeal .............................................27

            i.    Denial of Promotion and Area Chair Termination ...........................................................27

            ii.    2017 Area Chair Nomination ...............................28

            iii.    Denial of Research Funds ....................................29

    B.    Even if Plaintiff-Appellant Sufficiently Alleged an Adverse Employment Action, She Fails to Allege an Inference of Discriminatory Intent............................................30

            i.    Comparator Professors .........................................31

            ii.    Fordham Did Not Fail to Investigate Plaintiff-Appellant's Complaints or Otherwise Fail to Follow its Policies .................34

            iii.    Pattern of Derogatory Statements ........................38

II     THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF-APPELLANT'S RETALIATION CLAIMS .................40

    A.    The District Court Properly Addressed Plaintiff-Appellant's Title VII and ADEA Retaliation Claims..............41

            i.    Plaintiff-Appellant's Teaching Schedule ............42

            ii.    Suspension of Plaintiff-Appellant's Benefits................................................................43

    B.    Plaintiff-Appellant Failed to Plead Causation ..........................47

    C.    The District Court Properly Dismissed Plaintiff-Appellant's FMLA Retaliation Claims.....................................48

ii

D.    The District Court Applied the Correct Standard of
Review ...................................................................................49

III    THE DISTRICT COURT PROPERLY DISMISSED
PLAINTIFF-APPELLANT'S HOSTILE WORK
ENVIRONMENT CLAIM ...............................................................51

IV    THE DISTRICT COURT PROPERLY DISMISSED
PLAINTIFF-APPELLANT'S EQUAL PAY CLAIMS ....................53

V    THE DISTRICT COURT DID NOT COMMIT
PROCEDURAL ERRORS ...............................................................56

CONCLUSION ........................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002) ................................................... 51, 52-53

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................ 19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................ 19, 20

*Bentley, Jr. v. Mobil Gas Station*,
599 F. App'x 395 (2d Cir. 2015) ........................................................20

*Bickerstaff v. Vassar Coll.*,
354 F. Supp. 2d 276 (S.D.N.Y. 2004),
*aff'd*, 160 F. App'x 61 (2d Cir. 2005)................................................53

*Bigio v. The Coca-Cola Company*,
675 F.3d 163 (2d Cir. 2012) ........................................................19

*Boise v. Boufford*,
121 F. App'x 890 (2d Cir. 2005) ........................................... 24, 42, 49

*Brown v. Coach Stores, Inc.*,
163 F.3d 706 (2d Cir. 1998) ........................................................29

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014) ........................................................31

*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001) ........................................................22

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........................................................57

*Chepak v. Metro. Hosp.*,
555 F. App'x 74 (2d Cir. 2014) ................................................. 55, 56

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
140 S. Ct. 1009 (2020)................................................................50

*Duplan v. City of New York*,
888 F.3d 612 (2d Cir. 2018) ................................................. 49-50

iv

*E.E.O.C. v. Port Auth. of N.Y. & N. J.*,
  768 F.3d 247 (2d Cir. 2014) ........................................................... 53, 54

*Freyd v. Univ. of Oregon*,
  990 F.3d 1211 (9th Cir. 2021) ...............................................................55

*Graham v. Long Island R.R.*,
  230 F.3d 34 (2d Cir. 2000) ........................................................... 31, 32

*Green v. Brennan*,
  578 U.S. 547 (2016)................................................................................26

*Henry v. NYC Health & Hosp. Corp.*,
  18 F. Supp. 3d 396 (S.D.N.Y. 2014) ............................................. 21, 33

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
  470 F. Supp. 2d 345 (S.D.N.Y. 2007) ...................................... 34-35, 36

*Klein v. New York Univ.*,
  786 F. Supp. 2d 830 (S.D.N.Y. 2011) ........................................... 24, 42

*Krasner v. HSH Nordbank AG*,
  680 F. Supp. 2d 502 (S.D.N.Y. 2010) ...................................................53

*Lalanne v. Begin Managed Progs.*,
  346 F. App'x 666 (2d Cir. 2009) ...........................................................29

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015) .......................................................... 41, 47

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
  6 F.4th 293 (2d Cir. 2021) ............................................................ 22, 50

*Luka v. Bard College*,
  263 F. Supp. 3d 478 (S.D.N.Y. 2017) ...................................................39

*Malcom v. Honeoye Falls Lima Cent. Sch. Dist.*,
  483 F. App'x 600 (2d Cir. 2012) ................................................... 23-24

*Mathirampuzha v. Potter*,
  548 F.3d 70 (2d Cir. 2008) ...................................................................23

*Mazzo v. Mnuchin*,
  751 F. App'x 13 (2d Cir. 2018) .............................................................21

*Michel v. Westchester Cnty.*,
  151 F. App'x 22 (2d Cir. 2005) .............................................................27

v

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ........................................................................ 28, 52

*Ninying v. New York City Fire Dep't*,
   807 F. App'x 112 (2d Cir. 2020) ..........................................................41

*O'Dell v. Trans World Entm't Corp.*,
   153 F. Supp. 2d 378 (S.D.N.Y. 2001),
   *aff'd*, 40 F. App'x 628 (2d Cir. 2002)...................................................51

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007) .................................................... 21-22, 30

*Rasmy v. Marriott Int'l, Inc.*,
   — F.3d —, No.18-3260-cv, 2020 WL 1069441 (2d Cir. Mar. 6, 2020).............51

*Rojas v. Roman Catholic Diocese of Rochester*,
   660 F.3d 98 (2d Cir. 2011) ...................................................................35

*Sanders v. New York City Human Resources Admin.*,
   361 F.3d 749 (2d Cir. 2004) .................................................................21

*Sanderson v. N.Y. State Elec. & Gas Corp.*,
   560 F. App'x 88 (2d Cir. 2014) ............................................................52

*Scott v. Fischer*,
   616 F.3d 100 (2d Cir. 2010) .................................................................19

*Sealy v. State Univ. of New York at Stony Brook*,
   834 F. App'x 611 (2d Cir. 2020) .................................................... 41, 43

*Shultz v. Congregation Shearith Israel of City of New York*,
   867 F.3d 298 (2d Cir. 2017) .................................................................26

*Talwar v. Staten Island Univ. Hosp.*,
   610 F. App'x 28 (2d Cir. 2015) ............................................................54

*Tannerite Sports, LLC v.
   NBCUniversal News Grp., a division of NBCUniversal Media, LLC*,
   864 F.3d 236 (2d Cir. 2017) ......................................................... 56-57

*Tomassi v. Insignia Fin. Grp., Inc.*,
   478 F.3d 111 (2d Cir. 2007) .................................................................39

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015) ...................................................................41

vi

*Vengalattore v. Cornell Univ.*,
   36 F.4th 87 (2d Cir. 2022) ...................................................................21

*Williams v. Addie Mae Collins Cmty. Serv.*,
   No. 11 CIV. 2256 LAP, 2012 WL 4471544 (S.D.N.Y. 2012) ...........................21

**Statutes & Other Authorities:**

20 U.S.C. § 1681 ...................................................................1

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1331 ...................................................................1

29 U.S.C. § 206(d) ...................................................................1

29 U.S.C. § 621 ...................................................................1

29 U.S.C. § 634 ...................................................................1

29 U.S.C. § 2601 ...................................................................1

29 U.S.C. § 2654 ...................................................................1

42 U.S.C. § 2000e ...................................................................1

26 C.F.R. § 54.4980B-4 ...................................................................46

26 C.F.R. § 54.4980B-4(e) ...................................................................38

26 C.F.R. § 54.4980B-10 ...................................................................48

Faculty Statute § 4-01.02 ...................................................................10

Faculty Statute § 4-03.02(b) ...................................................................34

Faculty Statute § 4-05.08 ...................................................................37

Faculty Statute § 4-05.10(b) ...................................................... 44, 45, 48

Faculty Statute Appendix 4, A-18(b) ...................................................................44

Faculty Statute Appendix 4, A-18(c) ...................................................................45

Fed. R. Civ. P. 12(b)(6) ...................................................... 19, 54

N.Y. Exec. Law § 290 ...................................................................2

N.Y. Exec. Law § 297 ...................................................................2

N.Y. Lab. Law § 194 ...................................................................2

N.Y.C. Admin. Code § 8-101 ...................................................................2

N.Y.C. Admin. Code § 8-131 ...................................................................2

## JURISDICTIONAL STATEMENT

### A. Basis for District Court Jurisdiction

The District Court had original jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff-Appellant's Complaint alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 to 2654, and the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d).

### B. Basis for Court of Appeals Jurisdiction

The jurisdiction of the Court of Appeals is based on 28 U.S.C. § 1291.

Pursuant to an Order dated March 29, 2022, the District Court dismissed all claims against the Defendant-Appellee. The Clerk's Judgment was entered on March 29, 2022 and a Notice of Appeal from the final judgment disposing of all claims against all parties was filed on April 22, 2022.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Did the District Court properly dismiss Plaintiff-Appellant's discrimination claims under Title VII, Title IX, and the ADEA?

2.    Did the District Court properly dismiss Plaintiff-Appellant's retaliation claims under Title VII, the ADEA and FMLA?

1

3. Did the District Court properly dismiss Plaintiff-Appellant's hostile work environment claim?

4. Did the District Court properly dismiss Plaintiff-Appellant's equal pay claims?

5. Did the District Court commit any procedural errors or apply the improper standard of review?

## STATEMENT OF THE CASE

Plaintiff-Appellant Esther Solomon ("Plaintiff-Appellant") seeks redress for a laundry list of perceived grievances and slights that span most of her thirty-four-year career at Fordham University ("Fordham" or the "University"). Specifically, Plaintiff-Appellant brings claims of discrimination and retaliation against Fordham under Title VII, Title IX and the ADEA. Plaintiff-Appellant also claims that she was subjected to a hostile work environment at Fordham in violation of Title VII. Plaintiff-Appellant further alleges that she was paid less than similarly situated employees in violation of the EPA. In addition to her federal law claims, Plaintiff-Appellant also brings claims under various New York statutes including the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 ("NYSHRL"), the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131 ("NYCHRL"), and the Achieve Pay Equality Act of 2015, N.Y. Lab. Law § 194.

Plaintiff-Appellant was afforded three opportunities to amend her complaint by the District Court. However, despite these numerous opportunities and specific instructions by the District Court as to what Plaintiff-Appellant must plead to state a claim against Fordham, Plaintiff-Appellant simply failed to plead facts sufficient to support a claim. As such, Fordham seeks affirmance of the District Court's orders dismissing Plaintiff-Appellant's pleadings in their entirety.

## STATEMENT OF RELEVANT FACTS

### A. Background

Defendant-Appellee Fordham University is a New York university offering educational services to more than 15,000 students across nine schools. Plaintiff-Appellant is a Jewish woman, who was 68 years old at the time she filed her complaint. JA80. Plaintiff-Appellant has been a Fordham University faculty member for over 34 years. JA071. Plaintiff-Appellant is currently a tenured associate professor at Fordham's Gabelli School of Business, which offers both graduate and undergraduate courses at the Rose Hill campus in the Bronx and the Lincoln Center

campus in Manhattan. *Id.* Plaintiff-Appellant claims that she is the only tenured faculty member in her area who is female or Jewish. *Id.*

### B. Facts Alleged Supporting Discrimination Claims

Plaintiff-Appellant generally claims that Fordham has discriminated against her on the basis of her religion, sex and age. JA80. Plaintiff-Appellant's claims span her entire career at Fordham dating back to her initial hiring in 1984.

#### i. Pre-2017 Grievances

Plaintiff-Appellant lists a number of events over the course of decades which she purports support her discrimination claims against Fordham. Specifically, Plaintiff-Appellant claims that she was denied promotion in 2001 and 2003 due to her religious beliefs. JA090-JA091. Plaintiff-Appellant alleges that when she was first eligible for promotion in 2001, the promotion committee chair rescheduled the meeting from a Wednesday in Manhattan to a Friday afternoon in the Bronx. JA090. She alleges that this kept two Jewish professors from voting due to their observation of the Jewish Sabbath. Plaintiff-Appellant provided no details regarding her 2003 promotion denial. Plaintiff-Appellant further claims that from 2004 to 2007, she appealed denial of her promotion multiple times but each of these appeals was denied. JA091.

Plaintiff-Appellant also claims that, in 2013, she was nominated to be chair of her area of the business school. JA073. Plaintiff-Appellant further alleges that

after her nomination, the then Dean of the Gabelli School of Business, contacted Plaintiff-Appellant and orally proposed a contract for her to serve as the area's chair for three years in exchange for a stipend as well as a reduced course load. JA072. Plaintiff-Appellant alleges that this nomination was rescinded at a hearing on October 7, 2013, during which the then Provost purportedly compared Plaintiff-Appellant to a child. JA114.

Plaintiff-Appellant also claims that she was mistreated in 2015 and 2016 during her time as a member of Fordham's faculty senate. Specifically, Plaintiff-Appellant alleges that after raising concerns regarding the curriculum revision process, her actions provoked an adverse response form other members of the Gabelli School of Business Faculty. JA193-JA198. Plaintiff-Appellant claims that after she raised those concerns, a meeting was convened to pass a resolution seeking the removal of Plaintiff-Appellant from the faculty senate. JA203-JA206. During this process, which occurred in or about 2015 or 2016, two co-workers allegedly described Plaintiff-Appellant as "unprofessional" and stated that she has a "strong personality." JA085.

Plaintiff-Appellant took a leave of absence during the Fall 2016 and Spring 2017 semesters to pursue a faculty fellowship. JA083. She also took an additional unpaid leave during the Fall 2017 semester. *Id.* Plaintiff-Appellant alleges that following these leaves, she sought to be considered as a candidate for area chair

again in June 2017. JA087. Plaintiff-Appellant claims that in response, administrators imposed new rules designed to prevent her from being nominated as area chair. *Id.* Plaintiff-Appellant further claims that, on October 27, 2017, she sent a letter to administrators withdrawing from consideration for the area chair position because of the "pattern of actions" against her. JA170-JA186. Plaintiff-Appellant alleges that she was also required to pay for most of her expenses during conferences she attended during her 2016 and 2017 leaves of absence. JA087.

### ii. Post-2017 Assignment of Course Schedule

In addition to the aforementioned allegations of "mistreatment" by her colleagues, Plaintiff-Appellant also alleges that she was discriminated against "in terms of the nature, time, and location of the classes she has been assigned to teach." JA080, JA083. Plaintiff-Appellant states that she "*prefers* to teach graduate classes on the Lincoln Center campus" and despite her "preferences" she was assigned courses at the "campus [Bronx], and level of students [undergraduates] which were most undesirable to her." JA083. Plaintiff-Appellant claims that in September 2017, the "discriminatory conduct escalated" as she had been "exiled" to the Bronx campus and given many low-level courses and placed under the supervision of a younger non-tenure track contract clinical instructor. JA080. Plaintiff-Appellant asserts that, in contrast, similarly situated male colleagues have not been given "such inferior and burdensome assignments." *Id.*

6

On January 11, 2018, Plaintiff-Appellant filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). JA073. Plaintiff-Appellant alleges that as a result of this filing, Fordham escalated its discrimination against her by once again assigning her Fall 2018 classes on the Bronx campus that were scheduled for late Friday afternoons and for times slots ending at 9:15 p.m. JA074.

Plaintiff-Appellant further alleges that she took FMLA leave during the Fall 2018 semester and that when she returned, "non-existing rules were cited to penalize her with another heavier than normal teaching load the next semester." JA102. After attempting to negotiate a reduced spring teaching schedule, Solomon requested unpaid leave for the Spring 2019 semester. JA212-JA222.Fordham granted her request. JA103.

### iii. Alleged Code of Conduct Violations

During a meeting in December 2017 with then area chair Dr. Michael Pirson regarding her issues with her course schedule, Plaintiff-Appellant claims that Pirson cut Plaintiff-Appellant off in an allegedly "abrupt and intimidating way" and that she "was effectively humiliated and silenced" for the remainder of the meeting. JA089. Four days later, Plaintiff-Appellant claims she learned that a proposal for research funding she had submitted for the summer of 2018 had been denied. JA088. She claims that she was provided no reason for this denial. JA072.

7

Following this meeting, Plaintiff-Appellant received an email from the Dean informing her that the Dean had been advised that Plaintiff-Appellant engaged in a conversation regarding her course schedule that was viewed as "lacking civility" which could constitute a violation of Fordham's code of conduct. JA136-JA137. Plaintiff-Appellant was not formally charged with code of conduct violations and was instead invited by the Dean to utilize Fordham's formal grievance process should she have an issue with her course schedule. *Id.*

### iv. Alleged Failure to Investigate Informal Complaints

Plaintiff-Appellant claims that over the years, she has made multiple "complaints" that Fordham has failed to investigate. JA116. Plaintiff-Appellant attached to her pleadings a discussion with Fordham's EEO officer dated December 18, 2017, in which Plaintiff-Appellant asked for information on steps that were to be taken regarding a complaint she raised in October 2017 regarding her 2013 area chair termination hearing. JA132-JA134. Plaintiff-Appellant also referenced her issues regarding her course assignments. *Id*. Fordham's EEO officer responded by stating she had no record of Plaintiff-Appellant filing a discrimination or retaliation allegation but that she was "very willing to investigate further but will need these clarifications from [Plaintiff-Appellant]." *Id.* Plaintiff-Appellant responded by stating that she previously discussed these issues with Fordham's EEO officer in 2014 and attached a series of PDFs containing letters Plaintiff-Appellant had written

8

to Fordham's administration regarding issues she had with her area chair termination and her time as a faculty senator. JA285-JA295.

## C. Facts Alleged Supporting Unequal Pay Claims

Plaintiff-Appellant also claims that, throughout her employment at Fordham, she has received a significantly lower salary than younger, male, non-Jewish professors. JA081. Plaintiff-Appellant alleges that in 2017, younger male professors in the Gabelli school of business made nearly double her salary. Plaintiff-Appellant supports this allegation with a conclusory assertion that she "has performed substantially similar work that requires equal skill, equal effort and equal responsibility" despite being paid less than other professors. JA111. Plaintiff-Appellant also cites to salary data from 2005-2006 to support her unequal pay allegations. *Id.*

## D. Facts Alleged Regarding Comparator Professors

To support both her discrimination and unequal pay claims, Plaintiff-Appellant lists a number of professors she believes are similarly situated to her but who are treated more fairly and have a higher salary. Specifically, Plaintiff-Appellant lists a number of Fordham professors who she believes are comparators. JA107. Plaintiff-Appellant does not describe these professors' specific job duties, but rather, merely cites to sections of Article 4 of Fordham's University Statutes which provide Policies and Procedures for Faculty ("Faculty Statutes"). JA105.

Plaintiff-Appellant cites to the definition of the term "Faculty" which includes distinguished professors, university professors, professors, associate professors and assistant professors who are tenured or have received tenure-track appointments. *Id.* She also cites Faculty Statute § 4-01.02, which indicates that Faculty members have responsibility over "curriculum, subject matter and methods of instruction, research, faculty status, and those aspects of student life which relate to the educational process." *Id.* She alleges that all faculty members are subject to "the same teaching, research and service standards." JA107.

Plaintiff-Appellant does not provide further details about the alleged comparator professors in her pleadings. Rather, Plaintiff-Appellant simply lists the ages of younger male and female professors who she believes receive a higher salary than her. JA112.

### E. Facts Alleged Supporting Retaliation Claims

As previously described, Plaintiff-Appellant alleges that after filing her EEOC complaint and the action underlying this appeal, both in 2018, Fordham escalated its discrimination against her by assigning her undergraduate classes on Fordham's Bronx campus which she did not wish to teach. JA074. Specifically, Plaintiff-Appellant alleges that she was provided with a course schedule on June 4, 2018, covering three classes in Fall 2018 and three classes in Spring 2019. JA102.

Plaintiff-Appellant characterizes this teaching load as "retaliatory" and "punitive," and she claims it was in excess of Fordham's "contractual teaching load." *Id.*

Instead of teaching the courses assigned to her, Plaintiff-Appellant took FMLA leave for the Fall 2018 semester. JA103. Plaintiff-Appellant alleges that when she returned, she was again assigned a course schedule which she did not prefer. *Id.* Plaintiff-Appellant attempted to negotiate a reduced course schedule for Spring 2019, however, when she was unable to do so, she requested and was granted an unpaid leave of absence. JA212-JA222. Fordham has continued to offer Plaintiff-Appellant course schedules throughout the course of this litigation. JA390-JA399. Instead of returning to teach at Fordham, Plaintiff-Appellant has continued to request unpaid leaves of absence.

In addition to issues with her course schedule, Plaintiff-Appellant also claims that she was retaliated against because her benefits were suspended while she was on unpaid leave. Plaintiff-Appellant claims that beginning on February 1, 2020, her healthcare and other Fordham benefits were terminated requiring her to maintain those benefits through COBRA. JA034. Plaintiff-Appellant asserts that suspension of her healthcare and other benefits was an act of "secret termination" which should have afforded her the protections afforded to termination of tenured faculty under the Faculty Statutes. JA024-JA025, JA062-JA067. However, even her own pleadings demonstrate that she was aware that her medical coverage and other

11

benefits would be suspended in accordance with Fordham's Faculty Statutes since she requested an unpaid leave for the Spring 2020 semester that was not for study or research. JA300-JA315. Fordham further explained to Plaintiff-Appellant that Fordham could not classify Plaintiff-Appellant's leave as one for "study and research" or as "in the interest of the University" – since it was not – just so that Plaintiff-Appellant could retain her benefits. *Id.* As was explained to Plaintiff-Appellant, she had already been approved to receive research funds for Summer 2020 and the University believed that it was in its best interest to have Plaintiff-Appellant teach in the Spring 2020 semester, which Plaintiff-Appellant refused to do. *Id.*

### F. Course of Proceedings and Disposition

Plaintiff-Appellant filed a complaint in the United States District Court for the Southern District of New York on May 24, 2018. JA002. Plaintiff-Appellant filed an amended complaint on March 13, 2019 ("First Amended Complaint"). JA004. Fordham moved to dismiss Plaintiff-Appellant's First Amended Complaint on May 6, 2019. JA005.

### i. First Order

The District Court granted Fordham's motion to dismiss the First Amended Complaint in its entirety in its order dated March 17, 2020 ("First Order"). SPA2-32.

12

In its First Order, the District Court noted that, despite listing many perceived grievances over the years, the only action capable of giving rise to an adverse employment action against Plaintiff-Appellant were her claims related to her teaching schedule starting in Spring 2018. SPA022. The District Court ultimately held, however, that Plaintiff-Appellant failed to plead an inference of discriminatory intent. *Id.* Specifically, while Plaintiff-Appellant attempted to plead that she was treated less well than similarly situated faculty members, she failed to plead facts sufficient to show that she was similarly situated to the alleged comparators. *Id.* The District Court also held that while Plaintiff-Appellant may have been the subject of comments she believed to be derogatory, those comments were made years apart and were "hardly a pattern of derogatory statements." SPA023. The District Court further noted that Plaintiff-Appellant's claim that Fordham failed to investigate her complaints was insufficient as she failed to ever file a formal discrimination complaint with Fordham. SPA024.

The District Court also dismissed Plaintiff-Appellant's unequal pay claims as she failed to plead with specificity that similarly situated employees were paid more than her. SPA025. The District Court noted that Plaintiff-Appellant pled with specificity the job duties of only two other employees, both of whom Plaintiff-Appellant admitted had greater roles and responsibilities than her. *Id.*

13

In addressing her hostile work environment claims, the District Court listed several claims that Plaintiff-Appellant alleged formed the basis of her hostile work environment claim. The District Court concluded that most of the events alleged by Plaintiff-Appellant "are not hostile enough- if hostile at all- to support a hostile work environment claim." SPA027. The District Court specifically noted that none of Plaintiff-Appellants interactions regarding her pay or her course schedule were rude or abusive. Thus, the District Court dismissed Plaintiff-Appellant's hostile work environment claims.

Finally, the District Court dismissed Plaintiff-Appellant's retaliation claims under Title VII, the ADEA and FMLA. In doing so, the District Court held that Plaintiff-Appellant's first protected activity was the filing of her EEOC complaint in 2018. SPA029. The District Court further held that the retaliatory acts complained of by Plaintiff-Appellant were not "harmful to the point that they could dissuade a reasonable person from making or supporting a charged of discrimination." SPA030. While the District Court dismissed Plaintiff-Appellant's First Amended Complaint in its entirety, the District Court granted Plaintiff-Appellant leave to further amend her complaint. SPA031.

### ii. Second Order

Plaintiff-Appellant filed her second amended complaint on April 16, 2020 ("Second Amended Complaint"). JA008. Fordham moved to dismiss Plaintiff-

Appellant's Second Amended Complaint on May 29, 2020. *Id.* In its order dated December 29, 2020, the District Court granted Fordham's motion in its entirety. ("Second Order"). SPA035-SPA069.

In its Second Order, the District Court examined Plaintiff-Appellant's new allegations which attempted, but failed, to establish facts sufficient to support her discrimination and unequal pay claims. The District Court held that, while Plaintiff-Appellant listed the names of many allegedly similarly situated professors, she failed to plead those individuals' specific work duties and how they are similar to hers. SPA053. Instead, the District Court noted that Plaintiff-Appellant insufficiently alleged that "all tenured faculty members in her [a]rea are similarly situated and thus proper comparators." SPA052. The District Court, following the precedent set by this Circuit, held that such pleadings are insufficient to support a discrimination or unequal pay claim. SPA054-SPA055.

The District Court also held that discriminatory intent could not be inferred by Fordham's alleged failure to investigate Plaintiff-Appellant's alleged complaints. While Plaintiff-Appellant attached Fordham's Whistleblower Policy and additional correspondence with Fordham's administration, the District Court held that Plaintiff-Appellant failed to sufficiently allege that she ever made a formal complaint of discrimination. SPA060. All of Plaintiff-Appellant's communications with Fordham's administration and its EEO officer involved issues with Plaintiff-

15

Appellant's course schedule and grievances from years prior but did not otherwise mention discrimination. *Id.* The District Court noted that while Plaintiff-Appellant did not need to use "magic words" to make a discrimination complaint, she at least needed to "make clear the basis of her complaint." *Id.*

The District Court also dismissed Plaintiff-Appellant's hostile work environment claims as the only additional allegations added to her Second Amended Complaint involved comments made in 2013. The District Court held her hostile work environment claim was time-barred and not otherwise related to her other claims. SPA064.

Finally, the District Court addressed Plaintiff-Appellant's new claims of retaliation regarding discontinuation of her healthcare benefits. The District Court thoroughly considered all of Plaintiff-Appellant's communications with Fordham regarding her benefits and unpaid leaves of absence in determining that Plaintiff-Appellant failed to plead that she was entitled to maintain her benefits while she refused to return to campus to teach, and instead took voluntary unpaid leaves of absence. SPA065-SPA066. The District Court also noted that the provisions of the Fordham Faculty Statutes cited to by Plaintiff-Appellant did not contain any provision under which Plaintiff-Appellant was entitled to maintain her benefits while on unpaid voluntary leave. SPA066-SPA067. Thus, the District Court held that

16

Fordham's suspension of Plaintiff-Appellant's benefits while she was on unpaid leave was not retaliatory. SPA067.

While the District Court granted Plaintiff-Appellant leave to amend her complaint for a third time, it also held that she must obtain leave of court by attaching a copy of her proposed third amended complaint to her request and by explaining how she addressed the deficiencies identified by the District Court. SPA069.

### iii. Third and Fourth Orders

As permitted by the Second Order, on February 1, 2021, Plaintiff-Appellant filed a motion seeking leave to file a third amended complaint. JA009. In its order dated June 4, 2021 ("Third Order"), the District Court examined Plaintiff-Appellant's proposed additions regarding her causes of action. Regarding her additional allegations related to alleged comparator professors, Plaintiff-Appellant only referred to the two professors who the District Court already determined in its First and Second Orders had sufficiently different roles at Fordham such that they are not comparable to Plaintiff-Appellant. SPA079-081. As for Plaintiff-Appellant's other claims, the District court held that Plaintiff-Appellant merely recited perceived grievances that the District Court already held in its First and Second Orders were insufficient to support a claim against Fordham. SPA082-083. As to Plaintiff-Appellant's retaliation claims, the District Court granted Plaintiff-Appellant permission to file a third amended complaint limited to additional allegations

17

regarding those claims. The District Court, referring to the new facts regarding suspension of her benefits while she was on voluntary unpaid leaves of absence, noted that these facts could have impacted the District Court's analysis of Plaintiff-Appellant's retaliation claims. SPA079. Since the District Court did not have sufficient briefing on those new issues it permitted Plaintiff-Appellant to file a third amended complaint solely limited to her "Title VII and ADEA retaliation claims based on her unpaid leaves of absence." *Id.*

Plaintiff-Appellant filed her Third Amended Complaint on June 11, 2021 ("Third Amended Complaint"). JA010. On July 22, 2021, Fordham moved to dismiss Plaintiff-Appellant's Third Amended Complaint. JA011. The District Court granted Fordham's motion in its entirety in its order dated March 29, 2022 and thereafter entered a final judgment in favor of Fordham ("Fourth Order"). SP111-131. Specifically, after reviewing all of Plaintiff-Appellant's allegations supporting her claim of entitlement to continued healthcare and other benefits while on an unpaid leave of absence under the Faculty Statutes, the District Court determined that a plain reading of the Faculty Statutes did not support Plaintiff-Appellant's retaliation claim. SPA127-SPA128. The District Court also held that nothing about Fordham's actions triggered the provisions of the Faculty Statutes related to termination of tenured faculty as Plaintiff-Appellant's status as a tenured faculty member has not changed. SPA128. The District Court ultimately held that Plaintiff-

18

Appellant failed to plead that her participation in a protected activity was the reason her healthcare and other benefits were suspended while she was on unpaid leave and dismissed the Third Amended Complaint.

## STANDARD OF REVIEW

The District Court's legal determinations regarding dismissals pursuant to Fed. R. Civ. P. 12(b)(6) are subject to *de novo* review. *See Bigio v. The Coca-Cola Company*, 675 F.3d 163 (2d Cir. 2012). This Court "may affirm a district court's dismissal of a complaint on any basis supported by the record." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010).

It is well settled that, to survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662*, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, unless a plaintiff's

19

allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 556 U.S. at 680.

While this Court has noted that *pro se* complaints should be read with "special solicitude" and be interpreted "to raise the strongest claims that it suggests," this Court has routinely affirmed the dismissal of *pro se* complaints where the plaintiff has failed to plead enough facts to state a claim that is plausible on its face. *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395 (2d Cir. 2015) (internal citation omitted).

## SUMMARY OF ARGUMENT

The District Court properly dismissed all of Plaintiff-Appellant's claims against Fordham as set forth in the aforementioned thorough orders. Plaintiff-Appellant has simply failed to state a claim against Fordham since her grievances amount to nothing more than dissatisfaction with her teaching schedule and disagreements she has had with co-workers over her decades of continued employment at Fordham, none of which are actionable. For the reasons stated below, the District Court's dismissal of Plaintiff-Appellant's claims should be affirmed.

## ARGUMENT

## I

## PLAINTIFF-APPELLANT'S FEDERAL DISPARATE TREATMENT CLAIMS WERE PROPERLY DISMISSED

The District Court properly dismissed Plaintiff-Appellant's discrimination claims brought under Title VII, Title IX, and the ADEA. To establish a claim under

20

Title VII, a party must show: "(1) [she] belonged to protected class; (2) [she] was qualified for the position; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *See Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal citations omitted). The standard for analyzing discrimination claims under the NYSHRL and ADEA is the same as Title VII. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 403 (S.D.N.Y. 2014); *Mazzo v. Mnuchin*, 751 F. App'x 13, 14 (2d Cir. 2018) (internal citations omitted). Similarly, discrimination claims brought under Title IX are generally analyzed under the same analysis as claims brought under Title VII. *Id.* at 103.[1]

To properly state a claim for discrimination under Title VII and the ADEA, a plaintiff must plead facts sufficient to demonstrate a "facially plausible nexus between her protected characteristics" and the actions taken against her. *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 CIV. 2256 LAP, 2012 WL 4471544, at *4 (S.D.N.Y. 2012). This Court has made clear that "[t]he *sine qua non* of a . . . discriminatory action claim under Title VII is that "the discrimination must be because of"" the plaintiff's protected characteristic. *Patane v. Clark*, 508 F.3d 106,

---

[1] Fordham notes that while the District Court dismissed Plaintiff-Appellant's claim under Title IX holding that Title IX does not create a cause of action for university employees alleging gender discrimination, this Court recently clarified this issue in *Vengalattore v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022) holding that university employees may bring discrimination claims under Title IX.

21

112 (2d Cir. 2007) (internal citation omitted). While to survive a motion to dismiss a Title VII plaintiff need not establish a *prima facie* case of discrimination, a plaintiff must plead facts from which a court can infer that an adverse action was taken against the plaintiff "because of [their] sex, or other protected characteristic." *Id.* (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Similarly, while a plaintiff bringing claims under the ADEA need not specifically plead "but-for" causation, a plaintiff must nevertheless plead facts which "plausibly allege" that the plaintiff would not have suffered an adverse employment action "but for [her] age." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021). Second Circuit courts routinely dismiss discrimination causes of action where a plaintiff's pleadings fail to give fair notice to a defendant of the acts that form the basis of their claims. *See Patane*, 508 F.3d at 113.

The District Court properly dismissed Plaintiff-Appellant's discrimination claims under Title VII and the ADEA.[2] Specifically, the District Court held that her allegations regarding her alleged "termination," her previous denials of promotion, and the termination of her area chair appointment in 2013 were did not amount to adverse employment actions. The District Court held that the only plausible adverse

---

[2] In its First Order, the District Court noted that while it held that Plaintiff-Appellant could not bring a cause of action under Title IX, even if she could, her discrimination claims would fail for the same reasons her Title VII and ADEA discrimination claims fail. SPA018. Thus, although Plaintiff-Appellant may be able to bring a claim as an employee under Title IX, her claims nonetheless fail for the reasons set forth herein.

action identified by Plaintiff-Appellant was related to changes to her teaching schedule in Spring 2018. SPA050. However, even if Plaintiff-Appellant made a plausible adverse employment action claim, Plaintiff-Appellant failed to sufficiently allege facts that raised an inference of discrimination surrounding that action. SPA061. For the reasons stated below, the District Court's determination regarding Plaintiff-Appellant's discrimination claims must be upheld.

### A. Plaintiff-Appellant Fails to Allege an Adverse Employment Action

On appeal, Plaintiff-Appellant lists several issues which she believes constitute adverse actions against her. Those actions include changes to Plaintiff-Appellant's course schedule, her allegedly "disparate pay," "workplace sabotage," and alleged termination due to suspension of her healthcare and other benefits while on voluntary unpaid leaves of absence. Plaintiff-Appellant's Br., pp. 42-43. Despite listing several alleged adverse actions, Plaintiff-Appellant only focuses her argument on an alleged "termination" and issues with her course schedule which she describes as a "demotion and transfer" as part of a "constructive discharge." *Id.* at pp. 43, 45.

An adverse employment action under Title VII is "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). For a change to be considered materially adverse, a change in working conditions must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Malcom v. Honeoye Falls Lima Cent. Sch. Dist.*,

483 F. App'x 600, 662 (2d Cir. 2012). As will be set forth below, Plaintiff-Appellant failed to plead facts sufficient to demonstrate that she suffered an adverse employment action during her employment at Fordham.

### 1. Dissatisfaction With Course Assignments Does not Constitute an Adverse Employment Action

It is well established in the Second Circuit that "[a] university professor's dissatisfaction with course assignments when she 'does not allege any resulting loss in wages' is not an adverse employment action." *Klein v. New York Univ.*, 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011) (quoting *Boise v. Boufford*, 121 F. App'x 890, 893 (2d Cir. 2005)). The crux of Plaintiff-Appellant's discrimination and retaliation claims revolve around actions taken related to her teaching schedule. Plaintiff-Appellant complains that she was assigned classes that she "did not want to teach" that "were contrary to [Plaintiff-Appellant's] wishes" but fails to assert that being assigned a less than desirable course schedule led to any reduction in her pay or benefits. JA085-JA086. In fact, Plaintiff-Appellant's claims are nearly identical to those that courts in this Circuit have consistently held are not actionable forms of adverse employment actions under Title VII. *See Klein*, 786 F. Supp. 2d, at 847; *Boise*, 121 F. App'x, at 892. As such, Plaintiff-Appellant did not suffer an adverse employment action related to her course schedule.[3]

---

[3] While the District Court held that Plaintiff-Appellant's claims related to her teaching schedule were the only allegations pled by Plaintiff-Appellant which "could plausibly

24

## 2. Plaintiff-Appellant Was Never Terminated

Further, the District Court did not err by failing to find that Plaintiff-Appellant alleged facts sufficient to support her claim that she had been "terminated" by Fordham. Simply put, Plaintiff-Appellant was not terminated by Fordham and remains a tenured faculty member. JA687. In her Appellate Brief, Plaintiff-Appellant claims that she suffered a "secret termination" as Fordham allegedly made "contradictory reports" when it mischaracterized her employment status while she was on unpaid leave as "termination" for COBRA benefit purposes, despite later correcting it to "reduction in hours." Plaintiff-Appellant's Br., p. 44; SPA128. The documents attached to Plaintiff-Appellant's Third Amended Complaint makes clear that upon receiving notice that Plaintiff's healthcare benefits were mistakenly discontinued in April 2019, Fordham worked with its insurance company to have her healthcare benefits restored. JA380-JA388. Further, Plaintiff-Appellant was only provided with COBRA benefits as a result of her decision to continue to take unpaid leaves of absence. JA300-JA315. As such, Plaintiff-Appellant's receipt of COBRA benefits in no way supports her claim that she was secretly "terminated" by Fordham.

---

constitute and actionable adverse employment action," the District Court nevertheless dismissed Plaintiff-Appellant's discrimination claims as she failed to plead facts sufficient to support an inference that the changes in her teaching schedule were because of her protected characteristics. SPA050, SPA061.

25

Plaintiff-Appellant mistakenly relies on *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 304 (2d Cir. 2017) to support her claim that she received a notice of termination which exhibits an adverse employment action. In that case, this Court held that, in some instances, a notice of termination from an employer to an employee can constitute and adverse employment action, even if the employer later rescinds the termination, this holding was "based on the facts of this case, and is not without limitations." *Id.* at 306. The Court stated that "[a] notice of termination is unlike other types of actions that an employer may take towards an employee in that it announces a complete termination of employment." *Id.*[4]

Here, Plaintiff-Appellant clearly never received a notice of termination of her employment from Fordham. Plaintiff-Appellant merely relies on the notifications she received regarding her COBRA healthcare benefits. Such notifications do not constitute a notice of termination as contemplated by this Court in *Shultz* since the COBRA notifications Plaintiff received in no way announced "a complete termination of employment." *Shultz*, 867 F.3d at 304. First, while Plaintiff-Appellant's status was initially reported to COBRA as "terminated," as the District Court noted, this was later corrected to indicate a reduction in hours, which

---

[4] Plaintiff-Appellant's reliance on *Green v. Brennan*, 578 U.S. 547 (2016) is also misplaced as that matter involved an employee who resigned, not one who received a notice of termination.

26

constitutes a qualifying event under COBRA. SPA128. Second, Plaintiff-Appellant continues to be a tenured member of Fordham's faculty and has been offered an opportunity to teach each semester which would result in the full restoration of Plaintiff's salary and healthcare benefits. JA300-JA315, JA374-JA388. Plaintiff has simply chosen to decline her course schedule each semester and instead, request unpaid leaves of absence.

### 3. Other Claimed Adverse Employment Actions Not Mentioned on Appeal

Although not specifically addressed by Plaintiff-Appellee on appeal the District Court also addressed several other alleged adverse actions mentioned by Plaintiff-Appellant in her pleadings. While these allegations should be deemed abandoned, Fordham addresses each of the remaining factual allegations supporting Plaintiff-Appellant's claim of adverse employment action in turn. *Michel v. Westchester Cnty.*, 151 F. App'x 22, 23 (2d Cir. 2005) (holding that *pro se* plaintiff's claims that were not discussed in his appellate brief were abandoned on appeal).

### i. Denial of Promotion and Area Chair Termination

Although Plaintiff-Appellant does not specifically reference her denial of promotions and termination as area chair in 2013 in her Appellate Brief as possible adverse employment actions against her, and as such, these claims should be considered abandoned, in its First Order, the District Court analyzed whether these claims could constitute an adverse employment action. SPA019. The District Court

27

noted that, while failure to promote can constitute an adverse employment action in some instances, Plaintiff-Appellant's claims regarding her promotions and termination as area chair were time-barred as those claims arose in 2001, 2003 and 2013, well before the 300-day statute of limitations for her federal claims as her initial complaint was filed in January 2018. *Id.* The Supreme Court has made clear that "discrete acts" are not actionable in support of federal discrimination claims if time-barred "even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Plaintiff-Appellant has provided no reason that the District Court's ruling in this regarding should be disturbed. As such, the District Court properly held that Plaintiff-Appellant's allegations related to denial of promotion and termination as area chair could not support her discrimination claims.

### ii. 2017 Area Chair Nomination

Also not addressed by Plaintiff-Appellee on her appeal, is the allegation that she suffered an adverse employment action when she purportedly asked to be considered as a candidate for area chair again in June 2017 following leaves of absence in 2016 and 2017. SPA019-SPA020. Plaintiff-Appellant asserted that her possible candidacy for area chair was blocked by a "new wave of rules" designed to keep her from becoming area chair. JA087. The District Court held that Plaintiff-Appellant's claims in this regard were too conclusory to state a claim of

discrimination as she failed to plead that she applied for a specific position and was rejected. SPA020. Rather, Plaintiff-Appellant merely claimed that she asked the then Dean to be considered as a candidate for area chair. This Court has made clear that to state a discrimination claim, a plaintiff "must allege that [she] applied for a specific position and was rejected therefrom, unless such a requirement would be 'quixotic' under a particular set of facts." *Lalanne v. Begin Managed Progs.*, 346 F. App'x 666, 667–68 (2d Cir. 2009) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)). Here, it is clear that Plaintiff-Appellant failed to include such allegations regarding her 2017 area chair candidacy and, as such, the District Court properly held that claim was insufficient to be considered an adverse employment action.

### iii. Denial of Research Funds

Also not addressed by Plaintiff-Appellant on appeal is the allegation that Plaintiff-Appellant claimed an adverse employment action emanating from Fordham's denial of her request for research funds. The District Court correctly held that Plaintiff-Appellant's claims regarding Fordham's denial of her requested research funding in December 2017 were insufficient to constitute an adverse employment action. Specifically, the District Court held that Plaintiff-Appellant's claim were too conclusory to state a claim as Plaintiff-Appellant failed to plead that she was entitled to these funds or describe the adverse impact denial of these funds

had on her employment. SPA020-SPA021. Plaintiff-Appellant again provides no reason in her Appellate Brief that the District Court's holding in this regarding should be overturned.

Based on the foregoing, it is clear that Plaintiff-Appellant did not suffer an adverse employment action.

**B. Even if Plaintiff-Appellant Sufficiently Alleged an Adverse Employment Action, She Fails to Allege an Inference of Discriminatory Intent**

The District Court correctly dismissed Plaintiff-Appellant's discrimination claims as Plaintiff-Appellant failed to plausibly plead factual content supporting an inference of discrimination. In her Appellate Brief, Plaintiff-Appellant focuses on Fordham's purported failure to investigate Plaintiff-Appellant's claims of discrimination and Fordham's failure to follow its procedures for the termination of tenured faculty. Plaintiff-Appellant's Br., pp. 43-44. Plaintiff-Appellant only briefly mentions additional allegations to support her claims of discriminatory intent including "sex stereotyping" and "gender-based disparate pay." *Id.* at p. 45. However, Plaintiff-Appellant failed to plausibly allege the *sine qua non* of her discrimination claims namely that the actions she complains of were taken against her because of her protected characteristics. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). For the reasons stated below, it is clear that District Court properly

addressed each of Plaintiff-Appellant's claims regarding discriminatory intent and properly held that Plaintiff-Appellant failed to state a claim for discrimination.

### i. Comparator Professors

Although only referenced by Plaintiff-Appellant in the portion of her Appellate Brief related to her unequal pay claims, Plaintiff-Appellant's pleading deficiencies regarding alleged comparator professors in support of her discrimination claims warranted dismissal. "To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal citation omitted). In assessing whether a plaintiff is similarly situated in all material aspects to another employee, courts will consider "(1) whether the plaintiff and [comparators] were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

In its First Order, the District Court held that Plaintiff-Appellant only alleged in conclusory fashion that "men or non-Jews had a lighter [teaching] schedule than she did" which was clearly insufficient to establish that she was similarly situated to any alleged comparator. SPA022. The only two Fordham professors Plaintiff-Appellant provided any specific allegations about were Dr. Michael Pirson and Dr.

31

John Hollwitz. *Id.* In her Appellate Brief, Plaintiff-Appellant claims, in conclusory fashion, that she sufficiently alleged that she had greater seniority than both Drs. Pirson and Hollwitz but was nonetheless provided with a more burdensome teaching schedule. Plaintiff-Appellant's Br., p. 64. In her pleadings, while Plaintiff-Appellant alleged that those two professors were assigned less classes than she was, Plaintiff-Appellant also acknowledged that Dr. Pirson was acting area chair when Plaintiff-Appellant received her alleged discriminatory teaching schedule and Dr. Hollwitz in fact had greater seniority and was a former vice president at Fordham. SPA022-SPA023. Thus, it is clear that Plaintiff-Appellant failed to establish that she was subject to the same job responsibilities and workplace standards as Drs. Pirson and Hollwitz. In fact, she actually conceded that their roles were different from hers. JA046, JA092, JA107.

In its Second Order, the District Court acknowledged that Plaintiff-Appellant, in an attempt to augment her pleading, included in her Second Amended Complaint the names of fourteen male professors as well as several other professors who Plaintiff-Appellant claimed were similarly situated to her. SPA052. However, Plaintiff-Appellant failed to plead any specific job duties or otherwise describe the positions of each of the listed professors. Rather, Plaintiff-Appellant pled in conclusory fashion that all tenured faculty in her area of Fordham's business school are comparators. In support of this claim, Plaintiff-Appellant generally cited to the

32

Faculty Statutes to purportedly show that all tenured faculty share the same job responsibilities. JA106. Her Second Amended Complaint failed to cure the deficiencies of the first.

Specifically, the District Court held that merely citing to the Faculty Statutes and alleging that all faculty members are subject to their terms, did not show that Plaintiff-Appellant's job content was substantially similar to the professors Plaintiff-Appellant lists in her pleadings. SPA052-SPA053. In her Appellate Brief, Plaintiff-Appellant claims that the Faculty Statutes "give objective indicators for workplace" standards. Plaintiff-Appellant's Br., p. 63. However, as held by the District Court, such pleadings are far too broad to establish how other faculty members' workplace conduct compared to Plaintiff-Appellant. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014). The District Court further noted that the sections of the Faculty Statutes cited to by Plaintiff-Appellant were "expansive" and could describe the work for virtually any college or university professor. SPA053. Plaintiff-Appellant simply failed to specifically plead the job content and duties of the alleged comparator professors. As such, Plaintiff-Appellant's assertion that all professors are the same is insufficient to support a plausible conclusion that she was treated differently from other professors simply because of her gender, religion, or age.

Further, the District Court properly held that Plaintiff-Appellant's references to the Faculty Statutes did not cure the deficiencies in her pleadings related to Drs. Pirson and Hollwitz. SPA054. While Plaintiff-Appellant alleged that all professors were subject to the sections of the Faulty Statutes regarding course loads, section § 4-03.02(b) of the Faculty Statutes contains clear exceptions for faculty who are engaged in "major research projects," "significant administrative responsibilities" or other factors. SPA056. Plaintiff-Appellant's pleadings regarding Drs. Pirson and Hollwitz administrative responsibilities clearly differ from Plaintiff-Appellant in this regard. Thus, Plaintiff-Appellant failed to adequately plead that she was similarly situated to either Drs. Pirson, Hollwitz or the fourteen other professors who she alleges were treated more favorably.

### ii. Fordham Did Not Fail to Investigate Plaintiff-Appellant's Complaints or Otherwise Fail to Follow its Policies

Plaintiff-Appellant claims that discriminatory intent in this matter can be inferred through Fordham's alleged failure to investigate discrimination claims she purportedly made to Fordham's EEO officer and its administration. While an employer's failure to investigate complaints of discrimination can support an inference of discriminatory intent in some instances, it is well settled that "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct" are insufficient to support a discrimination claim under Title VII. *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp.

34

2d 345, 357 (S.D.N.Y. 2007). This Court has upheld the dismissal of discrimination claims where an alleged complaint was so generalized that the defendant could not have reasonably understood the plaintiff was complaining of conduct prohibited by a federal statute. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011).

In her pleadings, Plaintiff-Appellant referenced several emails and letters to Fordham's EEO officer and its administration which fail to state the grounds that formed the basis of her alleged discrimination complaint. JA132-JA134, JA270-JA296. As noted by the District Court in its First Order, Plaintiff-Appellant neither mentioned her age, gender, or religion in her emails to Fordham's EEO officer, nor did she connect her complaint to her course scheduling issues. SPA024.

Plaintiff-Appellant's only reference to her gender throughout her extensive correspondence was in a December 11, 2017 email to then area chair in which she stated her Spring 2018 teaching assignments "disadvantage me, a female senior faculty member." JA031. Plaintiff-Appellant attached this email to a December 18, 2017 email to Fordham's EEO officer. As acknowledged by the District Court in its Second Order, Fordham's EEO officer responded to Plaintiff-Appellant by stating "[i]t is not clear from [the attachments] as to what basis you are alleging you have been discriminated against . . . I am very willing to investigate further but will need these clarifications from you." JA133. Instead of providing Fordham's EEO officer

35

with further clarification and filing a formal complaint, Plaintiff-Appellant instead
responded by asking Fordham's EEO officer to inform her about the University's
response to her October 2017 letter regarding the 2013 area chair appointment.
JA134. As noted by the District Court, Plaintiff-Appellant's October 2017 letter did
not mention any protected characteristics. SPA059. Thus, the District Court
correctly held that Plaintiff-Appellant's communications with Fordham's EEO
officer and its administration were ambiguous and because Plaintiff-Appellant failed
to provide clarification when given the opportunity, Plaintiff-Appellant failed to
plausibly demonstrate that she made Fordham "aware of alleged discriminatory
misconduct." *See Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470
F. Supp. 2d 345, 357 (S.D.N.Y. 2007).

   Plaintiff-Appellant also failed to establish that Fordham failed to follow its
Whistleblower Policy related to the complaints Plaintiff-Appellant purportedly
made. As stated in Plaintiff-Appellant's pleadings, Fordham's Whistleblower Policy
states that employees are protected from retaliation and her entitled to investigation
when they make "wrongful conduct concerns." JA257. Wrongful conduct concerns
are defined as a suspected "violation of University policies" or state or federal law.
*Id.* However, Plaintiff-Appellant's December 2017 email to Fordham's EEO officer
almost entirely focused on her complaints regarding her 2013 area chair appointment
and did not otherwise mention any allegation of a violation of University policy or

state or federal law such that the Whistleblower Policy provisions were triggered. JA132-JA134. As such, the District Court correctly held that Plaintiff-Appellant's complaints to Fordham's EEO officer did not trigger the provisions of Fordham's whistleblower policy and, as such, Fordham did not "fail to investigate" those claims based on Plaintiff-Appellant's gender, religion, or age. SPA060.

Further, Plaintiff-Appellant's claim that discriminatory intent can be inferred from Fordham's failure to follow its procedures listed in Fordham's Faculty Statutes related to termination of tenured faculty are equally without merit. Section §4-05.08 deals with "Termination of Appointment" and states that its provisions are only triggered where the University seeks to "terminate a tenured appointment." JA242. Simply put, Fordham was not required to follow these procedures as Plaintiff-Appellant's employment with Fordham was never terminated. Plaintiff-Appellant remains a tenured faculty member and is free to resume teaching whenever she chooses.

To the extent Plaintiff-Appellant claims that suspension of her benefits while on elective unpaid leave violated her due process rights under the Faculty Statutes, that argument too was properly addressed and rejected by the District Court. As noted by the District Court in its Fourth Order, there is nothing in the Faculty Statutes which indicates that due process requirements under the statutes are triggered by a change in a tenured employee's benefits. The Faculty Statutes make clear that the

37

procedures for termination of tenured faculty are only triggered when the faculty member's appointment is to be terminated. JA242. As Fordham has stated throughout this litigation, Plaintiff-Appellant's status as a tenured faculty member remains unchanged.

Further, Plaintiff-Appellant's receipt of benefits through COBRA in no way supports a change in her status as a tenured faculty member. The COBRA statutes make clear that eligibility for COBRA benefits can occur under a "reduction of hours" designation due to ""an absence from work due to disability, a temporary layoff, or any other reason (other than due to leave that is FMLA leave; see § 54.4980B–10) is a reduction of hours of a covered employee's employment if there is not an immediate termination of employment." 26 C.F.R. § 54.4980B-4(e). Here, Plaintiff-Appellant was clearly eligible for COBRA benefits under a reduction of hours designation due to her repeated requests for unpaid leaves of absence. As such, there is simply no indication that Plaintiff-Appellant was terminated from her appointment as a tenured faculty member at Fordham.

### iii. Pattern of Derogatory Statements

Although not specifically referenced in her Appellate Brief, in her pleadings, Plaintiff-Appellant referenced several comments from co-workers over the years which Plaintiff-Appellant claims were derogatory. The District Court acknowledged that while in some cases a pattern of derogatory comments can give rise to an

inference of discriminatory intent, the more "remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." SPA055; *see Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007).

Here, Plaintiff-Appellant merely alleged that stray remarks were made to her over the course of years that were in no way connected to Plaintiff-Appellant's issues with her course scheduled. Specifically, Plaintiff-Appellant claimed that in 2013 during her area chair termination hearing, the then Provost stated in reference to Plaintiff-Appellant that "we all deal with our children in this way." JA114. Plaintiff-Appellant further alleged that the then Provost also stated a few days earlier that Plaintiff-Appellant had "strong opinions." *Id.* In addition, Plaintiff-Appellant claimed that in 2016, Dr. Prison stated that Plaintiff-Appellant had a "strong personality." JA058.

The District Court properly held that such isolated comments made years before Plaintiff-Appellant's issues with her course schedule arose are entirely insufficient to support an inference of discrimination. *Luka v. Bard College*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (holding that derogatory statements must be of a "continuous, escalating pattern" to state a claim for discrimination). The then Provost's comments in 2013 took place over four years before the issues with Plaintiff-Appellant's teaching schedule arose. Moreover, there is no allegation that

the Provost had any input on Plaintiff-Appellant's teaching schedule in 2018. Finally, the District court held that Dr. Prison's single comment made more than a year before Plaintiff-Appellant's issues with her teaching schedule, hardly amounts to a "pattern of derogatory statements." SPA023. Thus, the District Court properly held that the isolated comments cited to by Plaintiff-Appellant in her pleadings were insufficient to establish an inference of discrimination.

As such, the District Court properly dismissed Plaintiff-Appellant's discrimination claims because her pleadings failed to demonstrate any plausible nexus between the alleged adverse action and Plaintiff-Appellant's protected characteristics.

## II

## THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF-APPELLANT'S RETALIATION CLAIMS

Plaintiff-Appellant also claims that Fordham retaliated against her in violations of Title VII, the ADEA and FMLA. In her Appellate Brief, Plaintiff-Appellant claims that the District Court failed to examine several actions which she claims constituted retaliation by Fordham. For the reasons stated below, the District Court clearly addressed all of Plaintiff-Appellant's retaliation claims and properly dismissed those causes of action.

40

## A. The District Court Properly Addressed Plaintiff-Appellant's Title VII and ADEA Retaliation Claims

To plead a claim of retaliation under both Title VII and the ADEA, a plaintiff must allege that "(1) [s]he participated in a protected activity; (2) the employer knew of h[er] protected activity; (3) [s]he was subjected to an adverse employment action; and (4) there was a causal connection between the participation in the protected activity and the adverse employment action." *Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020). "An adverse employment action in a retaliation case 'includes conduct that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Sealy v. State Univ. of New York at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020) (internal citation omitted).

A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015) (internal citation omitted).

41

Plaintiff-Appellant includes a table on page 13 of her Appellate Brief which she claims outlines retaliatory actions taken by Fordham following her EEOC complaint in January 2018 and the filing of the instant action. This table includes three adverse actions: (1) "demotion & adverse action schedule"; (2) faculty payroll benefits; and (3) "Fordham reported Official Faculty Status to COBRA/ERISA." Plaintiff-Appellant's assertion that the District Court failed to mention and address some of these acts in its Orders is without merit.

**i. Plaintiff-Appellant's Teaching Schedule**

The District Court addressed Plaintiff-Appellant's claims of retaliation regarding her teaching schedule in its First Order. The District Court noted that Plaintiff-Appellant did not allege that her course load increased or was more burdensome, only that their location and time changed. SPA030. The District Court also noted, as other courts in this circuit have, that minor changes in a professor's course schedule, particularly without a resulting loss in wages or title, are insufficient to establish a claim for retaliation. *See Klein v. New York Univ.*, 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011) (quoting *Boise v. Boufford*, 121 F. App'x 890, 892 (2d Cir. 2005)) ("A university professor's dissatisfaction with course assignments when he or she 'does not allege any resulting loss in wages' is not an adverse employment action"). Plaintiff-Appellant does not claim that the changes to her course schedule resulted in any reduction in wages or loss in title. Rather,

42

Plaintiff-Appellant merely claims that her course assignments were contrary to Dr. Solomon's wishes." JA086-JA087. Such changes to Plaintiff-Appellant's teaching schedule were simply not "harmful to the point that it could well dissuade a reasonable person from making or supporting a charge of discrimination." *Sealy v. State Univ. of New York at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020). Thus, it is clear that the District Court addressed Plaintiff-Appellant's claims regarding her course schedule and properly held that they could not support her claims for retaliation.

### ii. Suspension of Plaintiff-Appellant's Benefits

The District Court also thoroughly addressed Plaintiff-Appellant's claims regarding loss of her benefits while she was on voluntary unpaid leave in its Second and Fourth Orders. Plaintiff-Appellant alleged that Fordham retaliated against her by discontinuing her healthcare benefits while she was on voluntary unpaid leave starting with the Spring 2020 semester. Plaintiff-Appellant's Br., p. 13; JA300-JA315. As acknowledged and examined by the District Court, prior to taking her unpaid leave for the Spring 2020 semester, Fordham offered Plaintiff-Appellant a schedule to teach three classes which would have allowed her to keep her benefits. JA300-JA314. Instead of teaching during the Spring 2020 semester, Plaintiff-Appellant chose to request an unpaid leave of absence. At the time Plaintiff-Appellant requested to take unpaid leave, Fordham's administration informed

43

Plaintiff that the University would honor her request for unpaid leave but that, in accordance with Fordham's University Statutes, the University would not cover the costs of her medical benefits during her leave as the University would not classify her leave as being for the purpose of study and research or as in the interest of the University since Plaintiff-Appellant had already been granted funding to conduct research in Summer 2020 and the University believed it was in the University's interest to have Plaintiff-Appellant teach her assigned course schedule. *Id.* Plaintiff-Appellant was also advised that she would have the option to continue her medical coverage through COBRA while she was on leave. *Id.*

The District Court analyzed the language in the Fordham Faculty Statutes in holding that Fordham's discontinuation of Plaintiff-Appellant's benefits while she was on unpaid leave was not retaliatory. As Plaintiff-Appellant was informed by Fordham's administration prior to requesting an unpaid leave of absence, the Faculty Statutes list circumstances under which tenured faculty members may be granted leaves of absence. Under §4-05.10(b), tenured faculty may receive a paid leave of absence to participate in a faculty fellowship, for sick leave, or maternity leave. JA305. Tenured faculty members are permitted to take a leave of absence without pay for study and research, reasons of health, or "other, when deemed to be in the best interests of the University." *Id.* Under Appendix 4, A-18(b) of the Faculty Statutes, "[a]ll benefits are continued for faculty members . . . who receive approval

44

from the Office of the Provost for an unpaid leave of absence, when that leave is taken for faculty development purposes. (See §4-05.10(b))." JA599-JA600. Further, under Appendix 4, A-18(c), "[f]aculty members . . . while on a University approved leave of absence without pay . . . may maintain coverage on the University life insurance, long-term disability, and medical plans." *Id*. Thus, because Plaintiff-Appellant's continued unpaid leaves of absence do not fall under one of the categories described above, it is clear that suspension of Plaintiff-Appellant's benefits while she was on an unpaid leave of absence was in accordance with §4-05.10(b) of the Faculty Statutes and not retaliatory.

The District Court also analyzed Plaintiff-Appellant's reference to Appendix 4, § A-18(c) of the Faculty Statutes. That section of the Faculty Statutes states that "[f]aculty members while on a University approved leave of absence without pay . . . *may* maintain coverage on the University life insurance long-term disability, and medical plans." SPA067. The District Court held that while not prohibited from covering Plaintiff-Appellant's benefits while she is on leave, the Faculty Statutes did not require Fordham to do so. *Id*. Further, the emails attached to Plaintiff-Appellant's pleadings make clear that it was Fordham's customary policy to not provide unpaid leave with benefits for faculty seeking to take leave that was not deemed to be for one of the purposes enumerated in § 4–05.10(b) of the Faculty Statutes. JA311. Moreover, Plaintiff-Appellant entirely failed to plead that she was treated differently

45

than any other Fordham faculty member who sought to take a similar leave of absence but was permitted to maintain their benefits. As such, the District Court correctly held that there was no inference that Fordham's actions in this regard were retaliatory.

Finally, the District Court also addressed Plaintiff-Appellant's claims regarding Fordham's allegedly retaliatory reports to COBRA. To the extent Plaintiff-Appellant claims that the original mischaracterization of her employment status as "termination" for COBRA purposes was retaliatory, this issue was later corrected and changed to "reduction in hours." JA025. The COBRA regulations specifically account for leaves of absence that result in a loss of benefits but do not constitute permanent terminations. The COBRA regulations state that "[a] reduction of hours . . . occurs whenever there is a decrease in the hours that a covered employee is required to work or actually works, but only if the decrease is not accompanied by an immediate termination of employment." 26 C.F.R. § 54.4980B-4. The regulations go on to state "[f]or example an absence from work due to disability . . . or any other reason (other than due to leave that is FMLA leave) . . . is a reduction of hours." *Id.* A reduction of hours due to a leave of absence is distinct from a termination under COBRA, but nevertheless constitutes a qualifying event under the statute. The District Court correctly held that Plaintiff-Appellant failed to plausibly allege that Fordham's suspension of her benefits while she was on voluntary unpaid leaves of

absence and allowing her to continue her healthcare benefits through COBRA, was in retaliation for Plaintiff-Appellant filing her complaint with the EEOC or filing the instant action.

### B. Plaintiff-Appellant Failed to Plead Causation

Plaintiff-Appellant also failed to plead that her engagement in a protected activity was the reason for suspension of her benefits. *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). In its Fourth Order, the District Court held that Plaintiff-Appellant failed to establish causation to support her retaliation claims as she voluntarily requested unpaid leaves of absence for the Spring and Fall 2020 semesters with the complete understanding that she would need to maintain her benefits through COBRA. SPA129. Fordham did not in any way compel Plaintiff-Appellant to take those leaves of absence and, rather, offered her teaching schedules which would have allowed her to maintain her University benefits which she simply rejected. The District Court also noted that Plaintiff-Appellant entirely failed to plead any facts indicating that Fordham's suspension of her benefits was made in response to Plaintiff-Appellant's activities in this litigation or any other protected activity. *Id.*

Plaintiff-Appellant also failed to plead sufficient facts that she was treated differently than any similarly situated co-workers. Plaintiff-Appellant does not identify any similarly situated co-worker who, like Plaintiff-Appellant, took an

47

unpaid leave of absence that was not for one of the purposes listed in the Faculty

Statutes and was nonetheless permitted to continue their healthcare benefits.

Plaintiff-Appellant's only allegation that she was treated differently than other

Fordham employees is her conclusory allegation that "it is not 'customary' to send

faculty on leave to COBRA" and that she is not "aware of any other faculty so treated

in her 35 years at the School." JA064. Plaintiff-Appellant does not identify any other

similarly situated employee who requested unpaid leave that was not for the

purposes of faculty development as described in Faculty Statute §4-05.10(b) and was

permitted to maintain their healthcare benefits through the University.

As a result, the District Court properly held that Plaintiff-Appellant failed to

establish the causation element of her retaliation claims.

### C. The District Court Properly Dismissed Plaintiff-Appellant's FMLA Retaliation Claims

Plaintiff-Appellant also claims the District Court erred in dismissing her

FMLA retaliation claims by relying "on an administrator as a 'witness' about

unwritten non-existing "policies" used to retaliate against Plaintiff post-FMLA

leave." Plaintiff-Appellant's Br., p. 57. Plaintiff-Appellant's claim in this regard is

without merit.

In her pleadings, Plaintiff-Appellant claimed that after taking FMLA leave

during the Fall 2018 semester, Fordham retaliated against her by giving her a

"heavier than normal teaching load," an "unfair assignment," and because her

48

"graduate Leadership class" was cancelled. JA080. In its First Order, the District Court dismissed Plaintiff-Appellant's FMLA retaliation claim holding that, by Plaintiff-Appellant's own admission, her Spring 2019 teaching schedule was no different than her Spring 2018 teaching schedule which was the semester she last taught before taking leave. SPA031. In doing so, the District Court did not rely on statements by any "witnesses" but rather Plaintiff-Appellant's own statements attached to her pleadings. JA214-JA215. Moreover, Plaintiff-Appellant fails to state an FMLA retaliation claim as she failed to allege losing any employment benefits as a result of her Spring 2018 schedule. As stated above, this Court has previously considered similar allegations and held changes in course assignments are not adverse employment actions when they do not result in a loss of pay. *Boise v. Boufford*, 121 F. App'x 890, 893 (2d Cir. 2005). Therefore, Plaintiff-Appellant's FMLA retaliation claims were properly dismissed.

### D. The District Court Applied the Correct Standard of Review

Plaintiff-Appellant further asserts that the District Court erred by failing to consider prior perceived adverse actions against her in making its determination on her retaliation claims. Plaintiff-Appellant's Br., p. 57. Specifically, Plaintiff-Appellant claims that the District Court should have taken into account events that occurred years prior to Plaintiff-Appellant taking any protected activity. Plaintiff-Appellant's Br., p. 52. Plaintiff-Appellant's reliance on *Duplan v. City of New York*,

49

888 F.3d 612 (2d Cir. 2018) in this regard is misplaced. In that matter, this Court noted that the plaintiff in that matter alleged "that each of the adverse actions alleged above occurred against a backdrop of continuing antagonism and frustration of his professional ambitions." *Id.* at 626. The language cited to by Plaintiff-Appellant was not a holding by this Court but rather a recitation of the plaintiff's argument. Moreover, the Plaintiff's allegations in support of his retaliation claim in *Duplan* only included events that occurred after he engaged in his protected activity. *Id.* at 617-618. Thus, Plaintiff-Appellant's claim that the District Court should have considered events that took place before she engaged in a protected activity is entirely unsupported.

Plaintiff-Appellant also asserts that the District Court improperly imposed summary judgment standards when reviewing her retaliation claims. Plaintiff-Appellant takes issue with the District Court's holding that Plaintiff-Appellant was required to plead that her engagement in a protected activity was the "but-for cause" Fordham's adverse actions against her. Plaintiff-Appellant's Br., p. 57. This Court has held that pleading a "but-for" causation is required at the pleading stage and is not merely a standard applied at summary judgment. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020)). To be clear, the District Court did not hold that Plaintiff-Appellant failed to *prove* "but-for" causation, but

50

rather that she failed to include any allegation to support a claim of "but-for" causation in her pleadings. As such, the District Court applied the proper standards in reviewing Plaintiff-Appellant's Pleadings.

## III

## THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF-APPELLANT'S HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff-Appellant's hostile work environment claims were also properly dismissed. To plead a claim for hostile work environment, a plaintiff must allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . so long as there is a basis for imputing the conduct that created the hostile environment to the employer." *Rasmy v. Marriott Int'l, Inc.*, — F.3d —, No. 18-3260-cv, 2020 WL 1069441, at *4 (2d Cir. Mar. 6, 2020) (internal citation omitted). Generally, "courts must distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment." *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001), aff'd, 40 F. App'x 628 (2d Cir. 2002) (emphasis added). This Court has cautioned that federal courts are not courts of "personnel appeals." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002).

Here, Plaintiff-Appellant lists a number of perceived hostile acts, which took place over the course of decades, all of which were addressed by the District Court.

51

In her appeal, Plaintiff-Appellant again refers to her issues with her course schedule, her exclusion from meetings, her removal as Area Chair in 2013, and her issues as part of the Faculty Senate as adverse actions that Plaintiff-Appellant claims support her hostile work environment claims. Plaintiff-Appellant's Br., pp. 58-59. The District Court addressed these issues and held that her issues regarding her removal as Area Chair and her issues with the Faculty Senate were time barred. SPA027.

Moreover, Plaintiff-Appellant's claim that these events should be considered along with her timely claims is without merit. This Court has made clear that "[i]n order for a timely incident to prolong a hostile work environment created by earlier action, the timely incident must be sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work environment." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F.App'x. 88, 91 (2d Cir. 2014) (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). The events Plaintiff-Appellant complains of took place over the course of years and do not in any way relate to one another. Thus, it was proper for the District Court to no consider Plaintiff-Appellant's time barred claims.

Plaintiff-Appellant's remaining claims are entirely insufficient to support a hostile work environment claim. As noted by the District Court, Plaintiff-Appellant's claims regarding her pay, her schedule, and her benefits were not abusive or otherwise rude. *See Alfano v. Costello*, 294 F.3d 365, 376-378 (2d Cir.

2002). Further, exclusion from meetings is not an actionable form of discrimination under Title VII or the NYSHRL. *Bickerstaff v. Vassar Coll.*, 354 F. Supp. 2d 276, 280 (S.D.N.Y. 2004), aff'd, 160 F. App'x 61 (2d Cir. 2005). Finally, Plaintiff-Appellant's references to comments made to her by co-workers, which occurred years apart, or to instances where other "raised their voices" and "cut off" Plaintiff-Appellant, are similarly insufficient to state a hostile work environment claim. *See Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 519 (S.D.N.Y. 2010) (holding that "harsh, unjust and rude" comments are insufficient to support a hostile work environment claim under Title VII or the NYSHRL).

As a result, the District Court properly dismissed Plaintiff-Appellant's hostile work environment claim.

## IV

## THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF-APPELLANT'S EQUAL PAY CLAIMS

The District Court also properly dismissed Plaintiff-Appellant's claims under the Equal Pay act and her unequal pay claims brought under Title VII and the ADEA. "[T]o prove a violation of the EPA, a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions*." E.E.O.C. v. Port Auth. of N.Y. & N. J.*, 768 F.3d 247, 254–55 (2d Cir. 2014) (internal citations omitted). The

standard is "demanding," and requires that a plaintiff "establish that the jobs compared entail common duties or content and do not simply overlap in titles or classifications." *Id.* at 255. Courts analyze equal pay claims under the ADEA and Title VII similarly to those brought under the EPA. *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 n.2 (2d Cir. 2015).

As stated in section I(B)(i) above, in her pleadings, Plaintiff-Appellant listed the names of a number of other Fordham professors who she claims are similarly situated to her. JA107. Plaintiff-Appellant further claimed that she is similar to those professors because all tenured Fordham faculty are subject to the same standards under the Faculty Statutes. JA106-JA107. Similarly, Plaintiff-Appellate claims in her Appellate Brief that she "provided the relevant sections of the Fordham Statutes that give objective indicators for workplace and discipline standards" and that this "meets the comparator standard." Plaintiff-Appellant's Br., p. 63.

However, Plaintiff-Appellant entirely ignores prior case law from this Court in which such similar pleadings have been held to be insufficient. For example, in *E.E.O.C. v. Port Auth. of N.Y. & N. J.*, 768 F.3d 247, 254–55 (2d Cir. 2014), this Court, in analyzing a motion for judgment on the pleadings which involves the same standard as a motion to dismiss under Rule 12(b)(6), held that plaintiff's argument that "an attorney is an attorney" was insufficient to support an Equal Pay Act claim when there were no allegations about different attorneys' job duties. Here, Plaintiff-

54

Appellant makes virtually the same argument that all tenured faculty at Fordham are the same. Plaintiff-Appellant does not in any way describe her specific job duties nor the specific job duties of the alleged comparators, let alone explain how those job duties are similar. Thus, Plaintiff-Appellant's pleadings in this regard are clearly insufficient. Moreover, while Plaintiff-Appellant argues that she provided "specific allegations with voluminous documentation and pay comparisons" she does not address her insufficient pleadings regarding the job duties of the alleged comparator professors. Plaintiff-Appellant's Br., p. 62.

Plaintiff-Appellant's reliance on *Freyd v. Univ. of Oregon*, 990 F. 3d 1211 (9th Cir. 2021) is misplaced. First, that decision from the Ninth Circuit has no controlling authority over the District Court or this Court. Regardless, *Freyd* is entirely distinguishable from the instant matter. In *Freyd*, the professors at issue were all of equal rank and seniority and the Ninth Circuit specifically noted that the university itself regularly compares the plaintiff and the comparator professors in question for purposes of determining faculty salaries. *Id.* at 1221. Here, Plaintiff-Appellant has gone out of her way to show that her seniority and job responsibleness actually differ from many of the comparators. Thus, *Freyd* does not support Plaintiff-Appellant's equal pay claims.

Plaintiff-Appellant's reliance on *Chepak v. Metro. Hosp.*, 555 F. App'x 74, 77 (2d Cir. 2014) is similarly misplaced. In that matter, while this Court overturned

dismissal of a *pro se* plaintiff's claims under the EPA and Title VII, the Court was careful to note that "it is clear that the job content and not job title or description is the standard" for determining whether a plaintiff is similarly situated to other employees. *Id.* at 77. Here, Plaintiff-Appellant merely states that all tenured Fordham faculty are the same and does not otherwise provide the job content of any of the alleged comparator professors. As such, it is clear that Plaintiff-Appellant's pleadings were insufficient to state a claim for unequal pay.

As such, the District Court properly dismissed Plaintiff-Appellant's equal pay claims in their entirety.

## V

## THE DISTRICT COURT DID NOT COMMIT PROCEDURAL ERRORS

Plaintiff-Appellant's final argument to avoid dismissal of her action is that the District Court made procedural errors that prejudiced her. Plaintiff-Appellant asserts that the District Court considered materials "not integral" to her pleadings in making its determinations. Plaintiff-Appellant's Br., p. 69. Plaintiff-Appellant claims that the District Court should have ignored unambiguous documents that she herself attached to her pleadings. *Id.* at p. 70.

As noted by the District Court in its Fourth Order, in ruling on a motion to dismiss, this Court has made clear that district courts may consider documents attached to the pleadings as exhibits. *Tannerite Sports, LLC v. NBCUniversal News*

56

*Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d. Cir. 2002)). Here, the District Court did not err by relying on documents that Plaintiff-Appellant herself attached to her pleadings in ruling on her motion to dismiss. Plaintiff-Appellant's claim that the District Court erred in not referencing documents attached to her pleadings, including reports from 2008 and 2016, is without merit as the District Court noted in its First Order that those events were beyond the statute of limitations. SPA027.

Finally, Plaintiff-Appellant's claim that the District Court resolved factual disputes in favor for Fordham is without merit. In each of its orders, the District Court noted that it must resolve all factual disputes in favor of Plaintiff-Appellant on a motion to dismiss. *e.g.* SPA029, SPA054, SPA113. Plaintiff-Appellant specifically takes issue with the District Court describing her consecutive leaves of absence as a choice. Plaintiff-Appellant's Br., p. 71. Plaintiff-Appellant essentially claims that the District Court should have ignored the litany of emails and other evidence attached to her pleadings which clearly show that Fordham has consistently offered her the opportunity to return as a full-time tenured faculty member. As discussed above, the District Court was clearly permitted to consider all materials attached to Plaintiff-Appellant's pleadings.

As such, it is clear that the District Court did not commit any procedural errors.

## CONCLUSION

The orders of the District Court dismissing all of Plaintiff-Appellant's claims should be affirmed.

Dated: January 6, 2023

Respectfully Submitted,

/s/ Jennifer A. McLaughlin
Jennifer A. McLaughlin
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3889

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7)(C)**

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,719 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word Office 2010 in 14-point Times New Roman font.

Dated: January 6, 2023

/s/ Jennifer A. McLaughlin
Jennifer A. McLaughlin
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3889

59

STATE OF NEW YORK   )
                                 )    ss.:
COUNTY OF NEW YORK  )

**AFFIDAVIT OF SERVICE**
**BY MAIL AND E-MAIL**


      I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above.

      **On January 6, 2023**

deponent served the within: **Brief for Defendant-Appellee**

      **upon:**

**Esther Solomon**
**140 West 62nd Street**
**New York, NY 10023**
**(212) 636-6187**
**etaki33@gmail.com**


the address designated by said attorney for that purpose, by depositing **2** true copy of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York and e-mail address(es) listed above.


**Sworn to before me on January 6, 2023**


**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026      **Job#  317811**